UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| INHABITANTS OF THE TOWN OF FAIRFIELD, </br></br> Plaintiff, </br></br> v. </br></br> TIME WARNER CABLE NORTHEAST LLC, </br></br> Defendant. | ) ) ) ) ) ) ) 1:14-cv-00495-JDL ) ) ) ) ) |

**RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT**

In this action, Plaintiff contends that Defendant has failed to pay all of the fees to which Plaintiff is entitled under a cable franchise agreement. Defendant maintains that it has paid the amounts due under the agreement.

The matter is before the Court on cross-motions for summary judgment. (Plaintiff Inhabitants of the Town of Fairfield's Motion for Summary Judgment, ECF No. 30; Defendant Time Warner Cable's Motion for Summary Judgment, ECF No. 32.) Following a review of the parties' submissions, and after consideration of the parties' arguments, I recommend that the Court deny Plaintiff's motion, and grant in part and deny in part Defendant's motion.

### BACKGROUND

The facts set forth herein are derived from the parties' stipulated statement of material facts (ECF No. 29) and their Local Rule 56 statements of material facts.

*Stipulated Factual Statement*

On September 17, 1996, the Town of Fairfield and State Cable TV Corporation, the predecessor to Defendant Time Warner Cable Northeast LLC, entered into a franchise agreement that remains in effect today. (Stipulated Stmt. ¶ 1.)

Section 25 of the Agreement states:

> FRANCHISE FEE. During the term of the Franchise, the Corporation shall pay the Town annually in accordance with the Cable Ordinance for the use of its public ways, public places, and other facilities as well as the maintenance, improvements, and supervision thereof, a franchise fee in an amount equal to <u>three percent (3%) of its annual gross revenues for Limited Basic Service</u>. The Town may at its option and pursuant to ordinances require the Corporation to collect from subscribers and annually pay to Town a fee in an amount up to <u>five percent (5%) of gross revenues</u>. The fee shall be paid on or before the 31st day of January following the calendar year on which the fee is based. The Corporation's obligation to collect the franchise fee pursuant to this section shall commence one year following receipt of written notice from the Town exercising its option to impose a franchise fee.

(*Id.* ¶ 2 (emphasis added).) The agreement defines "Limited Basic Service" to include, "as a minimum, (1) all non-satellite delivered signals of domestic broadcast television broadcast stations provided to any subscriber, (2) any public educational and governmental programming required by the franchise to be carried on the basic tier, and (3) any additional video programming signals added to the basic tier by the cable operator." (*Id.* ¶ 3.)

After execution of the agreement, Adelphia Communications acquired the cable system and maintained ownership until July 31, 2006, at which time a Time Warner Cable affiliate acquired the system. (*Id.* ¶ 5.) Defendant currently owns the cable system. Defendant is a successor-in-interest to State Cable TV Corporation, and is the proper Defendant in this action. (*Id.* ¶ 6.)

The minutes of Plaintiff's town council meeting of October 12, 2005, reflect that Resolution 05-72 was unanimously adopted "to authorize the Town Manager to request by letter

a fee increase from 3% to 5% from Adelphia Cable Company."[1]  (*Id.* ¶ 7.)  The Town Council unanimously approved the minutes at its next session on November 9, 2005.  (*Id.* ¶ 8.)  A resolution is a formal action of the Town Council.  (*Id.* ¶ 9.)

On October 13, 2005, Defendant's Town Manager, Paul Blanchette,[2] in a letter to Kathy Hounsell, Director of Government Community Affairs at Adelphia, wrote: "Please be advised that the Fairfield Town Council passed a resolution on October 12, 2005 to increase franchise fees from 3% of annual gross revenue for limited basic service to 5% of all gross revenues as per Section 25 of the existing franchise agreement signed by the Town of Fairfield and State Cable TV Corporation."  (*Id.* ¶ 10.)  Adelphia Communications received Mr. Blanchette's October 13, 2005, letter shortly after the letter was sent.  (*Id.* ¶ 11.)

### *Plaintiff's Supplemental Factual Statements* [3]

State Cable TV Corporation drafted the agreement and presented it to Plaintiff.  Plaintiff adopted the agreement without amendment.  (Pl.'s Stmt. of Material Facts (PSMF) ¶ 19, ECF No. 31.)[4]  Pursuant to the agreement, Defendant is able to provide cable services in the town of Fairfield in consideration for the payment of an annual fee.  (*Id.* ¶¶ 2 – 3.)

---

[1] The minutes do not clearly express whether the fee would be raised to five percent of all gross revenues or only five percent of gross revenues from limited basic service. (Pl.'s Stmt. of Add'l Material Facts ¶ 16, ECF No. 39.)

[2] Paul Blanchette died in 2010. (Stip. Stmt. ¶ 12.) This fact presumably is noted to establish that Mr. Blanchette is no longer available as a witness.

[3] The parties' statements of material facts contain several factual statements that the parties included in their stipulated statement, presumably to provide context for their respective statements. Additionally, many of the statements offered by a party in support of its motion for summary judgment are reintroduced in statements of "additional" facts in opposition to the other party's factual statements.

[4] Citations to Plaintiff's Statement of Material Facts are meant to include reference to the responsive paragraph of Defendant's Opposing Statement (ECF No. 37).

The agreement provides that "[t]his franchise shall not be amended or modified except by written agreement executed in the same manner as this franchise, except as provided in the Cable Ordinance." (*Id.* ¶ 27.) The agreement includes a notice provision, which states:

> <u>Notices</u>. Notices required to be sent to Town shall be in writing and shall be delivered by hand, or shall be sent by certified mail, return receipt requested, in either case to Town Manager, Town of Fairfield, 19 Lawrence Ave., P.O. Box 149, Fairfield, ME 04937, or such other address as may be designated by Town in writing. Notices required to be sent to Corporation shall be in writing and shall be delivered by hand, or shall be sent by certified mail, return receipt requested, to Corporation at its office at 261 State Street, Augusta, Maine 04330, or such other address as may be designated by the Corporation in writing filed with the Town Clerk.

(*Id.* ¶ 29.) The agreement does not permit oral modification. Specifically, the agreement reads: "The agreement expressed herein, in writing, constitutes the entire agreement between the parties and no oral statement shall add to or supersede any of its provisions." (*Id.* ¶ 28.)

Although the agreement (ECF No. 35-11) includes a definitional section, the agreement does not define "gross revenues." (*Id.* ¶ 20.) Five percent of gross revenues from all cable services is the maximum franchise fee permitted by federal law. (*Id.* ¶¶ 21 – 23.)

Plaintiff promulgated a cable ordinance, which provides:

> The Municipal Officers shall hereby have reserved to them the power, authority, and right to negotiate and require any other terms and conditions in a Franchise Agreement with any licensee as the Municipal Officers may deem reasonable and which are not inconsistent with any other section or part of this Ordinance, including but not limited to hold harmless provisions, rate approval, franchise fees, minimum production requirements, public access, assign-ability, termination and abandonment of service, use and reimbursement of consultants, monitoring the CATV system, and privacy.

(*Id.* ¶ 7.)

Under Plaintiff's form of local government, for the Town to exercise a contract right, the Municipal Officers must pass an authorizing resolution. (*Id.* ¶ 8.) At the October 12, 2005, town

council meeting, the Council passed unanimously a motion to require the cable provider to increase the franchise fee to five percent (5%) of all gross revenues.  (*Id.* ¶ 9.)[5]

Based on Mr. Blanchette's October 13 letter, Adelphia, Defendant's predecessor, increased the franchise fee payment to five percent of limited basic cable service.  (*Id.* ¶ 25.)  After Mr. Blanchette sent the letter to Adelphia, he spoke on the telephone with Michael Edgecomb, then a representative of Adelphia and now a representative of Defendant.  (*Id.* ¶ 30.)  The substance of the conversation is a disputed issue.  At his deposition, Mr. Edgecomb testified that he was unaware of any written communication sent to Defendant by Plaintiff that modified the terms of Mr. Blanchette's letter.  (*Id.* ¶ 31.)

In early 2007, Defendant made a franchise fee payment to Plaintiff that included five percent of its gross revenues from the Town's cable subscribers, but only for five months in 2006 (August through December).[6]  (*Id.* ¶ 16.)  From January 2007 forward, Defendant's annual payments consisted of five percent of gross revenues from limited basic cable only.  (*Id.* ¶¶ 17, 18.)  Defendant never required Plaintiff to pass an ordinance to obtain an increased fee.  (*Id.* ¶ 25.)

The parties agree that for the years 2009 through and including 2014, the difference between the amount that Plaintiff received and the amount that it would have received if the franchise fee had been calculated at five percent of gross revenues for all cable services is $352,981.52.  (*Id.* ¶ 36.)

---

[5] Plaintiff offers a transcript of the October 12, 2005, town council meeting.  The transcript, prepared from an audio recording, reflects that the Council authorized the town manager to request by letter that the franchise fee be increased from three to five percent of gross fees.  (*Id.* ¶ 9; Transcript, ECF No. 31-9, PageID # 353 – 54.)  The parties agree that absent Council action, Town Manager Blanchette would have lacked the authority to act in connection with the franchise agreement.  (PSMF ¶ 33.)

[6] The franchise fee payment is calculated at the end of each calendar year and paid on or before January 31 of the following year.  (PSAMF ¶ 49.)  The franchise fee provision states that "[t]he Corporation's obligation to collect the franchise fee … shall commence one year following receipt of written notice from the Town exercising its option to impose a franchise fee."  (Stipulated Stmt. ¶ 2.)

*Defendant's Supplemental Factual Statements*

Defendant has a number of cable-related revenue sources, including limited basic service (the lowest level of service), higher tiers of satellite delivered service, pay-per-view, installation, advertising, equipment, video on demand service, and premium programming services (such as HBO). (Def.'s Stmt. of Material Facts (DSMF) ¶ 37, ECF No. 33.)[7]

Defendant is legally entitled to pass through to its customers the local franchise fee that it pays to a municipality. (*Id.* ¶ 2.) Except for the period from August through December 2006, the five months immediately following its acquisition of the cable system, for which period it paid five percent of gross revenues from all cable services, Defendant has always passed through its franchise fee payments to its customers in the Town through a line item on the customers' cable bills, just as its predecessor, Adelphia, had done.[8] (*Id.* ¶¶ 1, 5.) Plaintiff is aware that Defendant has the "pass through" right and that Defendant has engaged in this practice. (*Id.* ¶ 4.)[9]

In January 2008, Defendant determined that although it had collected its franchise fee based on five percent of all cable revenues for five months in 2006, the fee should be based on five percent of revenues from limited basic cable service (less bad debt but including some additional minor revenues[10]). (*Id.* ¶¶ 47 – 48.) All payments after January 2008 have been based on the

---

[7] Citations to Defendant's Statement of Material Facts are meant to include reference to the responsive paragraph of Plaintiff's Opposing Statement (ECF No. 39).

[8] According to Mr. Edgecomb, Defendant did not pass through to its customers the enhanced fees it paid for the five months of 2006 because it concluded that the payment based on five percent of all revenues was an administrative error related to its acquisition of the cable system. (DSMF ¶ 44.) Mr. Edgecomb otherwise stated that no one at Defendant had knowledge of the reason the fees were based on five percent of gross revenues for this period. (*Id.* ¶ 43.)

[9] Resolution 05-72, which Plaintiff maintains authorized Mr. Blanchette to request an increase in the franchise fee, was not on the public meeting agenda for the October 12, 2005, council meeting. (DSMF ¶ 16.) In the past, Defendant has offered to increase Plaintiff's franchise fee to five percent of gross revenues if Plaintiff passed an ordinance to that effect, giving the residents of the town an opportunity to be heard on the subject. (*Id.* ¶ 9; Edgecomb Declaration ¶ 41, ECF No. 33-1.)

[10] The additional revenues may be related to pay-per-view and installation services. (Edgecomb Declaration ¶ 29.)

revenues from limited basic cable service. (*Id.* ¶¶ 51 – 52.) Plaintiff has known from at least 2011 that the franchise fee paid by Defendant was based on revenues from limited basic cable. (*Id.* ¶ 53.)

Mr. Edgecomb offered for Defendant to pay Plaintiff a franchise fee of 5 percent of gross revenues for all cable service in 2012 and in the future. (*Id.* ¶ 57.) In response, Plaintiff ultimately decided not to increase the franchise fee to 5 percent of gross revenues for all cable service or any other expanded revenue base at that time. (*Id.* ¶ 58.) The town manager in 2012, Joshua Reny, was not in favor of an increase in the franchise fees. (*Id.* ¶ 59.) For the years 2011, 2012 and 2013, Plaintiff believed that it was entitled to 5 percent of basic service revenues; based on the franchise fee statements submitted annually to Plaintiff, Plaintiff believed that the proper amount was collected and remitted. (*Id.* ¶ 60.) In 2014, Mr. Reny requested by letter that Defendant increase its franchise fee to five percent of gross revenues for all cable service. (*Id.* ¶ 63.) Plaintiff has no record that reflects that the Town Council voted to authorize Mr. Reny's 2014 request. (*Id.* ¶ 64.)

At a town council workshop on May 28, 2014, when Council members asserted that Defendant owed Plaintiff for many years of back franchise fees, Mr. Edgecomb suggested that if Plaintiff collected the fees, Defendant would have the right to pass the fee through to its customers.[11] (*Id.* ¶¶ 65 – 66.) Some of the councilors did not believe that Defendant would actually pass through such a payment because the fee would be unreasonable and would place Defendant at a competitive disadvantage with other providers.[12] (*Id.* ¶¶ 68 – 70.) At the workshop,

---

[11] Plaintiff asserts a relevance objection to any statement about Defendant's right to pass through fees to its customers.

[12] Defendant represents that it has "fierce competition from satellite providers that do not pay franchise fees." (DSMF ¶ 75.) Defendant also represents that it will pass through the back-franchise fee to its customers in the Town if Plaintiff prevails in this action. (Def.'s Stmt. Add'l Facts ¶¶ 19 – 20, ECF No. 37.)

Mr. Edgecomb asserted that Defendant would increase the fee to five percent of gross revenues for all cable services, provided Plaintiff passed an ordinance stating its intention to increase the fee to that level.  (*Id.* ¶ 72.)  Plaintiff has not passed such an ordinance and maintains that an ordinance is not required to increase the franchise fee.  (*Id.* ¶¶ 74.)

The Town Council's meeting minutes are official after the minutes are signed and attested by the town secretary and approved at the next town council meeting.  (*Id.* ¶ 20.)

### *Additional Factual Statements*

According to Defendant, the audio recording of the October 2005 town council meeting is unintelligible.  (*Id.* ¶ 22.)  Plaintiff contends that it has enhanced the recording to produce a transcript that establishes that the Town Council authorized Mr. Blanchette to request that Adelphia increase the franchise fee to "five percent of everything," which was understood to mean "gross account revenues" or "gross fees."  (Pl.'s Stmt. of Add'l Material Facts (PSAMF) ¶¶ 18 – 19, 22, ECF No. 39.)  Defendant argues that the transcript is not supported by the audio tape.  (Def.'s Reply Stmt. ¶¶ 18 – 19, 22, ECF No. 43.)

Plaintiff asserts that during the telephone conversation between Mr. Blanchette and Mr. Edgecomb, Mr. Blanchette confirmed that Plaintiff intended to increase the fee to five percent of gross revenues from all cable services.  (PSMF ¶¶ 30, 31.)  Defendant, based on representations made by Mr. Edgecomb, maintains that Mr. Blanchette discussed with Mr. Edgecomb a concern about the "pass through" of franchise fees to customers and that Mr. Blanchette told Mr. Edgecomb to increase the fee to five percent of gross revenues from limited basic cable service.  (DSMF ¶¶ 30 – 32.)[13]

---

[13] Plaintiff objects to this assertion, contending that it is an impermissible attempt to show an oral modification of either Mr. Blanchette's letter request or the franchise agreement itself.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support a finding in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists, and summary judgment must be denied to the extent a claim is supported on the record. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003). "Cross motions simply require" that the court "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996). In this task, the court "must consider each motion separately, drawing inferences against each movant in turn." *EEOC v. Steamship Clerks Union, Local 1066,* 48 F.3d 594, 603 n.

8 (1st Cir.), *cert. denied,* 516 U.S. 814 (1995).  Matters of law, however, are for the court to resolve. *Blackie v. State of Me.*, 75 F.3d 716, 721 (1st Cir. 1996).

## DISCUSSION

### A.  Breach of Contract

The elements of breach of contract claim are "(1) breach of a material contract term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. United Steel Structures, Inc.,* 1999 ME 31, ¶ 7, 724 A.2d 1248.  In this action, Plaintiff asserts that Defendant breached the franchise agreement in each year from 2008 through 2015 because Defendant did not pay a franchise fee in the amount of five percent of its gross revenues from all cable services.

To prevail on its breach of contract claim, Plaintiff must prove (1) that the franchise agreement authorized a franchise fee of five percent of gross revenue from all cable services; and (2) that Plaintiff effectively exercised its right to obtain payments in that amount.  Defendant maintains that Plaintiff cannot satisfy its burden, and also contends that Plaintiff waived its right to obtain payment or is otherwise barred from recovering payment in that amount.  Defendant further argues that as a matter of law, under the agreement, the franchise fee could only be increased to five percent of revenues from limited basic cable service.

#### 1.  *Construction of "gross revenues"*

When construing the language of a contract, courts must view the contract as a whole and avoid an interpretation that renders a provision meaningless.  *Whalen v. Down E. Cmty. Hosp.*, 2009 ME 99, ¶ 15, 980 A.2d 1252, 1256.  Unambiguous language receives its plain meaning. *Bangor Pub. Co. v. Union St. Mkt.*, 1998 ME 37, ¶ 5, 706 A.2d 595, 597.  If a material term is ambiguous, "the factfinder may 'entertain extrinsic evidence casting light upon the intention of the

parties with respect to the meaning of the unclear language.'" *Id.* (quoting *T-M Oil Co., v. Pasquale*, 388 A.2d 82, 85 (Me. 1978)).

"Whether contract language is ambiguous is a question of law …." *Id.* ¶ 5. Language is ambiguous if it is susceptible to more than one reasonable interpretation. *Richardson v. Winthrop Sch. Dep't*, 2009 ME 109, ¶ 9, 983 A.2d 400, 403. If a term is ambiguous and its construction is material to the dispute, generally speaking, summary judgment is not appropriate. *Boise Cascade Corp. v. Reliance Nat. Indem. Co.*, 99 F. Supp. 2d 87, 95 (D. Me. 2000).

The franchise fee provision reads as follows:

> During the term of the Franchise, the Corporation shall pay the Town annually in accordance with the Cable Ordinance for the use of its public ways, public places, and other facilities … a franchise fee in an amount equal to <u>three percent (3%) of its annual gross revenues for Limited Basic Service</u>. The Town may at its option and pursuant to ordinances require the Corporation to collect from subscribers and annually pay to Town a fee in an amount <u>up to five percent (5%) of gross revenues</u>.

In support of its motion for summary judgment, Plaintiff argues that the franchise agreement is plain and unambiguous. In particular, Plaintiff argues that the maximum franchise fee is five percent of gross revenues, and is not restricted, as the minimum fee is, to a percentage of revenues from limited basic service. (Pl.'s Motion for Summary Judgment at 4.) Plaintiff, therefore, contends that "it is fitting and proper for this Court" to conclude that the term gross revenues consists of all revenues from any source. (Pl. Motion at 6.) Defendant argues that "[a]s a matter of common sense, one cannot reasonably read the contract's second reference to 'gross revenues' to mean something other than what it means in the directly preceding sentence." (Def.'s Motion for Summary Judgment at 8.)

Preliminarily, Defendant's argument that the agreement unambiguously provides for a maximum fee in the amount of five percent of gross revenues for limited basic service is unpersuasive. At most, the lack of specific reference to limited basic service in connection with

11

the maximum possible fee (i.e., five percent of gross revenues) creates an ambiguity. That is, the term "five percent of gross revenues" is at a minimum reasonably susceptible to an interpretation other than "five percent of gross revenues for limited basic service." The issue is whether the term gross revenues is in fact ambiguous.

Plaintiff maintains that the term unambiguously means gross revenues from any source. Plaintiff's suggested interpretation demonstrates the ambiguity in the term as written in the agreement. When defining the maximum possible fee, the agreement does not identify the revenue base. Without a designated revenue base, one cannot discern the source from which the gross revenues are derived. Indeed, Plaintiff's argument requires that the Court insert a revenue base (i.e., "from any source") in order to determine the amount to which Plaintiff claims it is entitled. In fact, if the Court were to adopt either party's argument, the Court would have to insert a revenue base that is not explicitly stated. Given that more than one revenue base is potentially applicable, the term is necessarily susceptible to more than one reasonable interpretation.[14] The term, therefore, is ambiguous. Because the term is material to the parties' agreement, a factual inquiry as to the parties' intent is warranted. Summary judgment is thus not appropriate.[15]

---

[14] The possible revenue bases include, but are not necessarily limited to, revenue from limited basic cable service; all revenue from any source; revenue from television service only, and not from telephone and internet service; or revenue from all cable services, but not satellite services. Undoubtedly because "gross revenues" is susceptible to more than one interpretation, the franchise agreements for at least two towns in Plaintiff's geographic region specifically define the term. (DSAMF ¶¶ 4, 5.)

[15] Plaintiff argues that even if an ambiguity exists, the ambiguity should be construed against the Defendant, as its predecessor drafted the agreement. (Pl. Motion at 5.) The rule of construction known as contra proferentum is most often applied where the court is required to resolve a matter of contract construction, particularly in the context of disputes regarding insurance coverage and arbitration. *See*, *e.g.*, *Barrett v. McDonald Inv., Inc.*, 2005 ME 43, 870 A.2d 146 (relying on the rule in the context of an agreement to arbitrate, the enforceability of which must be determined by the court rather than the factfinder); *Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226 – 27 (Me. 1980) (discussing the rule in the context of an insurer's duty to defend). In other contexts, the rule generally is employed only out of necessity, i.e., where the extrinsic evidence of the parties' intent is insufficient to resolve the matter. Restatement (Second) of Contracts § 206 cmt. a. Were the rule otherwise, there would be few occasions in which the factfinder would resolve contract ambiguities, yet Maine law is clear that "[c]onstruction of an ambiguous contract is a question of fact for the fact-finder." *Halco v. Davey*, 2007 ME 48, ¶ 9, 919 A.2d 626, 629. *See also*, *e.g.*, *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1113 (N.J. Super. Ct. App. Div. 2002) ("That an ambiguity would be

### *2.    Municipal acts related to contract options*

Defendant contends that because Plaintiff did not properly exercise its right to obtain an increased franchise fee, Defendant is entitled to summary judgment. "By law, execution of a contract is an official [municipal] action that requires final approval in public session." 1 M.R.S. § 405(2). In support of its argument, Defendant cites the lack of a specific ordinance authorizing the increase and the lack of a legitimate public record of a vote by the Town Council authorizing the increase.

Contrary to Defendant's argument, the record contains ample evidence from which a factfinder could conclude that Plaintiff effectively exercised its rights under the agreement. For example, a factfinder could find the transcript of the October 12, 2012, town council meeting and the town manager's letter to Defendant the following day requesting the increase to be persuasive evidence that the Town Council duly authorized the increase.[16] The issue of whether in October 2012 Plaintiff properly authorized the increase is an issue for the factfinder.

---

construed against the drafter does not act as a bar to prevent [the drafter] from even introducing its extrinsic evidence.").

[16] In some jurisdictions, where the wording of the minutes is ambiguous, evidence other than the minutes is permitted to determine a municipality's intent. *Berkeley Elec. Coop., Inc. v. Town of Mount Pleasant,* 417 S.E.2d 579, 581 (S.C. 1992) ("Municipal records properly authenticated or verified are the only competent evidence of the proceedings of the transactions of the governing body.  Parol evidence cannot be admitted to explain, enlarge, or contradict minutes of the proceeding of a town council unless the minutes are incomplete or ambiguous." (internal citations omitted)); *Barbeck v. Twinsburg Twp.*, 597 N.E.2d 1204, 1208 (Ohio Ct. App. 1992) ("Given the ambiguity present, the trial court was justified in accepting testimony from witnesses who might be able to clarify what had actually taken place. This evidence was offered to explain, not contradict, the official minutes."). In others, parol evidence is not permitted, but ambiguities are construed against the private party who contracted with the municipality because the private party, believing the minutes were ambiguous concerning its rights, has the responsibility to ensure that the municipality's actual resolution was properly recorded. *Lange v. City of Batesville*, 972 So. 2d 11, 19 (Miss. Ct. App. 2008).

   In 1854, the Maine Supreme Court explained that proceedings before a school board could "be proved only by the record, or a copy thereof, properly authenticated" and that on that basis parol proof was properly rejected." *Jordan v. Sch. Dist. No. 3*, 38 Me. 164, 170 (Me. 1894). More recently, in 1980, the Maine Supreme Court appeared to reserve judgment on that question. *Dobbs v. Maine Sch. Admin. Dist. No. 50*, 419 A.2d 1024, 1029, n.12 (Me. 1980). In any event, the Maine cases cited by Defendant do not address the issue of ambiguity in official records.

Furthermore, Defendant's contention that Plaintiff must pass an ordinance to increase the franchise fee is unavailing. The agreement provides that Plaintiff "may at its option and pursuant to ordinances require the Corporation to collect from subscribers and annually pay to Town a fee in an amount up to five percent (5%) of gross revenues." The agreement does not state that a separate ordinance must be passed as a condition for each increase. Rather, based on a plain reading of the agreement, Plaintiff could request an increase provided that it followed its authorizing ordinance. At all pertinent times, Plaintiff had a cable ordinance that provided: "Municipal [o]fficers shall hereby have reserved to them the power, authority, and right to negotiate and require any other terms and conditions in a Franchise Agreement with any licensee as [they] may deem reasonable and which are not inconsistent with any other section or part of this Ordinance." The ordinance clearly conferred upon the Town Council the authority to increase the franchise fee. Defendant's argument that Plaintiff was required to pass a separate ordinance to increase the fee thus fails.[17]

### 3. *Waiver or modification of contract rights*

Defendant also seeks summary judgment based on Plaintiff's alleged waiver of its right to recover the amounts that Defendant allegedly failed to pay (i.e., the difference between five percent of gross revenues from limited basic service and gross revenues from any source). In support of its argument, Defendant cites (1) a telephone conversation between the town manager, Mr. Blanchette, and Defendant's representative, Mr. Edgecomb, during which Mr. Blanchette instructed Defendant to pay five percent of gross revenues from limited basic cable service; (2) Plaintiff's decision not to accept Defendant's subsequent offer to pay five percent of gross

---

[17] The lack of merit in Defendant's argument is evidenced by the fact that Defendant collected and paid to Plaintiff five percent of gross revenues from limited basic service without requiring a separate ordinance.

revenues going forward, with the understanding that Defendant would pass through the fee to the customers; and (3) Plaintiff's acceptance, without objection, of fees based on five percent of gross revenues from limited basic cable service for the years 2007 through and including 2014. (Def.'s Reply at 4 – 6.)

The record evidence upon which Defendant relies to support its argument is contested. For instance, Mr. Blanchette's October 13, 2012, letter is arguably inconsistent with the conversation that Mr. Edgecomb recounts. In addition, given that the agreement requires Plaintiff to provide written notice to exercise its right to modify the amount of the franchise fee, the effectiveness of the alleged oral modification requires the resolution of certain factual issues, including whether the parties' course of dealing permitted the oral modification.[18] Also, because Mr. Blanchette passed away in 2010, the record contains conflicting evidence as to when town officials became aware of Plaintiff's "right" to collect the higher fee, and whether Plaintiff knowingly waived the

---

[18] Applying Delaware law, this Court previously explained:

> [A] written contract containing a prohibition against amendment except by written document may also be modified by a course of dealing. *See Pepsi–Cola Bottling Co. v. Pepsico, Inc.,* 297 A.2d 28, 33 (Del. 1972) (finding that an oral agreement regarding pricing between a manufacturer and bottler had been substituted for written pricing provisions in the contract where the bottler had accepted periodic price changes made by the manufacturer over the course of fifteen years). Where a course of conduct is alleged to have modified the contract, "a subsequent course of conduct must explicitly address the contract provision in order to modify the parties' agreement." *KBQ, Inc. v. E.I. du Pont de Nemours & Co.,* 6 F. Supp. 2d 94, 99 (D. Mass. 1998) (citing *Pepsi–Cola Bottling Co.,* 297 A.2d at 32–34). This high burden ensures that the party asserting the oral modification is not doing so in an attempt to alter negotiated but unfavorable terms to the contract. *See Cont'l Ins. Co. v. Rutledge & Co.,* 750 A.2d 1219, 1230 (Del. Ch. 2000).

*New England Surfaces v. E.I. Du Pont de Nemours & Co.*, 517 F. Supp. 2d 466, 484 (D. Me. 2007) *aff'd in part, rev'd in part,* 546 F.3d 1 (1st Cir. 2008) *decision clarified on denial of reh'g,* 546 F.3d 11 (1st Cir. 2008). This principle is also well recognized in Massachusetts. *Bachorz v. Miller-Forslund,* 703 F.3d 27, 33 (1st Cir. 2012) ("As to a writing requirement, a contractual provision requiring modifications or waivers to be in writing does not prevent the parties from making such changes orally or through their conduct. Indeed, it is well settled Massachusetts law that parties, through their words or conduct, may modify a contract despite a provision requiring modifications to be in writing."). Although the Maine Supreme Judicial Court has not specifically addressed the issue, the reasoning is sound, and there is no reason to suggest that the Court would not adopt the same principle.

right.  *T.M. Oil Co. v. Barnes*, 402 A.2d 857, 859 (Me. 1979) ("An implied waiver requires the voluntary and knowing relinquishment of a right.")

### 4. *Statute of Limitations*

Plaintiff's contract claims are subject to a six-year statute of limitations.  14 M.R.S. § 752.  Defendant argues that Plaintiff's contract claim is barred in its entirety by the statute of limitations.  (Def.' Motion at 18 – 19.)  In effect, Defendant contends that Plaintiff's claim is based on "a single distinct event that has ill effects that continue to accumulate over time," which event occurred on or about October 2005, when Defendant did not honor the request set forth in Mr. Blanchette's letter.  (*Id.* at 19, quoting *McNamara v. City of Nashua*, 629 F.3d 92, 96 – 97 (1st Cir. 2011) (dicta).)  Plaintiff maintains that because its claim is based on Defendant's annual breach of its payment obligation, the claim is more akin to an installment payment under a promissory note and, therefore, the cause of action accrues when each payment becomes due and is unpaid.  *Hills v. Gardiner Sav. Inst.*, 309 A.2d 877, 883 (Me. 1973); *Barron v. Boynton*, 137 Me. 69, 72 (Me. 1940).

Although the parties' agreement contemplates annual payments, the amount of the payment for a particular year is unknown until a calculation is made based upon a percentage of certain revenues that Defendant generated for the year.  Given that the amount owed is unknown until the calculation is complete and the fee tendered, Defendant's suggestion that Plaintiff's claim is based on a single event that occurred more than six years before the filing of Plaintiff's complaint is unconvincing.

Indeed, the parties' agreement is in many ways a typical contract.  Defendant's payment obligation is in consideration for the "use of [Plaintiff's] public ways, public places, and other facilities as well as the maintenance, improvements, and supervision thereof …" (Stipulated Stmt. ¶ 2.)  The parties' agreement is thus an ordinary contract pursuant to which one party (Plaintiff)

provides services (access to and maintenance of certain ways, places and facilities) in exchange for monetary compensation paid by the other party (Defendant).  Should a party fail to perform under a material term of the agreement, a breach would occur and a cause of action on the breach would accrue.  *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 11, 750 A.2d 591, 595 ("[A] contract cause of action accrues at the time of the breach.")  Here, Plaintiff has alleged multiple breaches of the agreement within the statute of limitations.   Accordingly, Defendant's statute of limitations argument must fail.

**B.     Unjust Enrichment/Quantum Meruit**

In its complaint, Plaintiff has alleged claims of quantum meruit (count II) and unjust enrichment (count III).  Defendant argues that summary judgment is warranted on the claims because the parties' relationship is governed by a contractual relationship.  (Def.'s Motion at 15 – 18.)  Plaintiff contends that the claims are appropriate because "the written franchise agreement between [Defendant] and [Plaintiff] technically expired in 2011."  (Pl.'s Response at 17.)

Under Maine law, "[u]njust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay."  *A.F.A.B. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n. 3 (Me. 1994).  A claim for unjust enrichment, therefore, is not available when the parties' relationship is governed by contract, and the measure of damages is based on contract principles.  *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271.  *See also Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863, 866 – 67 ("The existence of a contractual relationship, precludes recovery on a theory of unjust enrichment.") (internal quotation marks omitted).

In this case, while Plaintiff alleges the existence of a contract, it also asserts that the written contract expired in 2011. (PSAMF ¶ 43.) The parties, however, stipulated that the written franchise agreement remains in effect. (Stipulated Stmt. ¶ 1.) Consistent with the stipulation, Defendant denied Plaintiff's assertion that the agreement expired in 2011. (DRSMF ¶ 43.) Because the matter is plainly governed by contract, Plaintiff cannot prevail on an unjust enrichment claim.

Quantum meruit "involves recovery for services or materials provided under an implied contract." *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d at 271. Quantum meruit claims are commonly asserted when there is an issue whether the parties reached a meeting of the minds on a material issue associated with a contractual undertaking, such that their agreement, if it is to be found, must be "implied in the circumstances surrounding the parties' relationship." *Estate of Boothby*, 532 A.2d 1007, 1009 (Me. 1987). Because the quantum meruit claim is consistent with the undisputed fact that the parties entered into a contractual relationship, Plaintiff's implied contract claim is not precluded by the assertion of a breach of contract claim. *See*, *e.g.*, *Jim's Plumbing & Heating, Inc. v. Home Loan Inv. Bank*, 2012 ME 124, ¶ 13, 55 A.3d 419, 423. *See also Runnells v. Quinn*, 2006 ME 7, ¶ 10, 890 A.2d 713, 716 (affirming award of quantum meruit relief despite written contract requiring that all changes involving extra costs be in writing). Accordingly, Defendant is not entitled to summary judgment on the quantum meruit claim.

### Conclusion

Based on the foregoing analysis, I recommend that the Court (1) deny Plaintiff's motion for summary judgment, (2) grant Defendant's motion for summary judgment on count II of Plaintiff's complaint, and otherwise (3) deny Defendant's motion for summary judgment.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 9th day of December, 2015.